*481 OPINION.
Smith:
The petitioner contends, first, that it is entitled to have included in its invested capital as paid-in surplus the amounts of $120,000 and $62,505 representing the alleged bonus value of the water-power rights acquired under the contracts of 1897 and 1905, respectively, with the Power Co. The respondent in his computation of the deficiencies herein has included in petitioner’s invested capital an amount of $60,000 representing the value of the water-power rights acquired under the contract of 1897, but has not included in invested capital any amount in respect of the later contract of 1905. The respondent now affirmatively contends, and has so amended his answer, that the $60,000 item was improperly included in petitioner’s invested capital and should be eliminated therefrom.
The pertinent parts of the revenue acts involved are found in section 207 of the 1917 Act and section 326 of the 1918 Act. These provisions, which are substantially alike in so far as affects the question in dispute, permit the inclusion in invested capital of all “paid-in or earned surplus.” Our first question then is whether there was any paid-in or earned surplus in respect of the waterpower rights acquired by the petitioner under the contracts of 1897 and 1905. We think not. Both of these transactions occurred between the petitioner and two other corporations, neither of which owned any of petitioner’s stock. Under the earlier contract of 1897 from the Carolina Construction Co. the petitioner acquired valuable water rights, the only consideration being that it erect and operate its mill upon the site designated. Neither the Carolina Construction Co. nor the Power Co., through which it acquired the power rights conveyed to the petitioner, was a stockholder of the petitioner. We have heretofore held that contracts of this nature secured from a nonstockholder do not give rise to a paid-in surplus. Cf. A. C. F. Gasoline Co., 6 B. T. A. 1337; Frank Holton & Co., 10 B. T. A. 1317; Tall Timber Lumber Co., 16 B. T. A. 300. Although the evi *482 dence shows that there was an interrelationship between all of these corporations, that is, the Carolina Construction Co., the Power Co., and the petitioner, through mutuality of stock ownership, it does not show to what extent their stock was mutually owned. In fact, we have before us no evidence as to the specific stockholdings in any one of these corporations. In this respect we think that the evidence is insufficient to support the petitioner’s contention that these corporations were “ similarly ” owned and that the conveyance of 1897 from the Carolina Construction Co. was in effect a conveyance to the petitioner from its own stockholders. Nor do we deem it material that certain stockholders of the petitioner, Habliston, Cohen, and Emry, joined in the conveyance from the Carolina Construction Co. by virtue of an option which they held on the water rights conveyed. Their option never having been 'exercised, the conveyance was, nevertheless, from the Carolina Construction Co. in its corporate capacity.
As to the conveyance of 1905 from the Power Co., whereby the petitioner acquired the right to the use of water to produce 450 additional horsepower, its position is less favorable, since in that agreement the water-power rights were conveyed in consideration of the payment of an annual rental per horsepower equivalent to at least a substantial part of its market value. There is evidence that this latter transaction was entered into at arm’s length. The agreement which embodied the conveyance of the water-power rights terminated a dispute, threatening litigation, in which the Power Co. was pressing a claim against the petitioner for several thousand dollars for alleged excess water power used under its former agreement. This fact likewise argues against the petitioner’s contention that the corporations here were similarly or mutually owned. Upon the facts shown, we think that the petitioner is not entitled to include in its invested capital any amount in respect of the water-power rights acquired either under the deed of 1905 or that of 1897.
The respondent has reduced petitioner’s invested capital as of August 31, 1916, by the amount of $120,293.68 representing depreciation alleged to have been sustained in prior years over and above that shown by the petitioner’s books of account. Petitioner contends that this reduction of its invested capital was unwarranted. The basis of this claim is that the petitioner’s depreciable properties had always been kept in repair and in a highly efficient working order; that the cost of all major repair items such as the reroofing of the buildings, the replacement of floors, the replacement of parts of machines, the cost of reclothing nappers, etc., had been charged to operating expense in the years in which such costs were incurred and that, therefore, the capital account was not inflated by such *483 costs and that the earned surplus shown by its books was not oyer-stated by reason of not charging off a sufficient amount for depreciation. The petitioner shows that from August 31, 1899, to August 31, 1916, it expended a total of $366,498.73 for supplies, which included the cost of replacements, and $84,127.25 for expense account or cost of repairs, and that both of these accounts were charged to expense; that such amounts were exclusive of the cost of repairs on tenant houses which were charged to rent and wages account and that the charge-off of $82,080 for depreciation of physical assets, $72,080 of which was charged directly to machinery account and $10,000 to tenement account, offset depreciation actually sustained; furthermore, that none of the 350 looms with which the petitioner began operation in 1899 were in use at August 31,1917, all having been discarded or exchanged for modern up-to-date looms. Upon this showing we think that the petitioner has overcome the presumption of the correctness of the respondent’s action in adjusting its corporate surplus as of August 31, 1916, on account of depreciation for prior years and that the invested capital should not be reduced by the $120,293.68 alleged depreciation sustained in excess of that charged off by the petitioner. See Cleveland Home Brewing Co., 1 B. T. A. 87; Russell Milling Co., 1 B. T. A. 194; Rub-No-More Co., 1 B. T. A. 228; Hamilton Manufacturing Co., 3 B. T. A. 1045; Western Star Milling Co., 5 B. T. A. 109; Welsh Packing Co., 9 B. T. A. 1169; Moraine Hotel Co., 15 B. T. A. 910.
The petitioner contends that it is entitled to an increase in the annual deduction allowed by the respondent on account of the exhaustion of the water-power rights acquired under the lease of 1905. The respondent has allowed an annual deduction of $359.77 computed upon a bonus value at March 1, 1913, of $33,098.50 spread ratably over the remaining life of the lease. The petitioner claimed no deduction from gross income in its income-tax returns in respect of the exhaustion of this lease. The respondent contends that inasmuch as the petitioner in its petition did not specifically allege any error with respect to the proper amount of exhaustion to be allowed upon this lease, the Board has no jurisdiction to determine the issue. The petitioner has, however, alleged that the respondent erred in disallowing amounts for depreciation for each of the taxable years and we think that the petitioner is entitled to prove depreciation upon any depreciable asset, even though the allegation of error with respect to the disallowance of a portion of the claimed depreciation did not cover this specific asset. The allegation of error that the respondent erred in disallowing a portion of the depreciation claimed on the return puts in issue the entire question as to the correct amount of exhaustion and depreciation allowable.
*484 The deficiency notice which formed the basis of the petition in this case stated in part as follows:
5. The March 1, 1913 bonus value of the 100-year lease, based on the remaining life of 92 years, an indicated annual saving of $2,650.00 and interest at 8%, has been determined for depreciation purposes as $33,098.50. The allowable yearly depreciation over a period of 92 years is $359.77. (Article 162, Regulations 45 and Regulations 62.)
The computation of the respondent was based upon the theory that the water-power rights had a value of $15 per horsepower per year. The evidence shows that between 1906 and 1809 the Power Co. sold additional water power to the petitioner at the rate of $18 per horsepower and that it sold surplus water power to other users at a per kilowatt rate equal to $23 per horsepower. A competent witness for the petitioner testified that the March 1, 1913, value of the water power was between $20 and $25 per horsepower. Upon this basis we think that the respondent should have found the fair rental value of the water-power rights in question was $20 per horsepower on March 1, 1913, and that the exhaustion of the water-power rights should be computed accordingly. The method of computation of the March 1, 1913, bonus value of the water-power rights is not in question.
The petitioner contends that the respondent has allowed inadequate deductions for depreciation of physical assets in each of the years involved, in that he has computed the depreciation on most of the assets at too low a rate. The respondent has used a composite rate of 4 per cent throughout on all classes of property. The petitioner contends that, since its physical assets were segregated in its books according to proper classification, the respondent should not have used a fiat rate as applied to all classes of property, but should have depreciated each group separately at the following rates:
Per cent Per cent
Machinery_ 7 Equipment_ 10
Mill buildings_ 3 Eire protection equipment_ 7
Tenant houses_ 5 Electrical equipment, Mill No. 2_10
Power plant_ 8 Construction equipment_ 15
Petitioner submits that although the composite rate used by the respondent for years prior to the taxable year may have given-an adequate depreciation deduction, it did not produce an adequate depreciation deduction for the years involved for the reason that the physical assets were operated under war-time conditions and operated considerably overtime.
Petitioner submits that it is an established policy to apply specific rates of depreciation to specific assets and that a fiat or composite rate is justified only in a case where it is impossible to segregate the cost of assets; that such condition does not obtain in the instant case. The respondent, on the other hand, contends that it is not *485 possible to apply specific rates to some of the classes of assets for the reason that the costs of the different assets within the same class are not properly segregated on the petitioner’s books of account, and that in any event a composite rate reaches the same result provided it be high enough to provide a reasonable deduction for depreciation.
Although the Board has approved the use of composite rates in particular cases (Hampton Cotton Mills, 2 B. T. A. 440, where a composite rate on the entire plant for the year 1920 was allowed at the rate of 6y2 per cent), we think that specific rates should be applied to specific assets where the cost of the specific assets is sufficiently accurately shown. Of course, assets within the same class often depreciate at different rates and the difficulty of applying specific rates to such assets is exemplified in the case of the power plant in this proceeding. Thus, it was testified with respect to the power plant that “ bars ” at the Roanoke Mills had been replaced every 7 years; that a penstock lasted 20 years; that petitioner’s experience is that a water wheel has to be replaced every 10 years to get the l?est efficiency of operation.
The principal assets of the petitioner are its machinery, brick buildings, and tenant houses. The evidence adduced warrants a conclusion that 8 per cent is a proper rate to be applied to the brick buildings; that 7 per cent is a proper rate for the machinery account during the tax years under review, although 5 per cent is a proper rate for prior years; that 5 per cent is a proper rate for the tenant houses; 8 per cent for the power plant as a whole; 10 per cent for equipment; 7 per cent for the fire protection equipment; 10 per cent for the electrical equipment, and 15 per cent for the construction equipment.
In his brief the respondent objects to any adjustment of depreciation allowances and contends that, since the petitioner has not shown the March 1, 1913, value of its assets acquired prior to and on hand at that date, no proper basis for a recomputation of depreciation deductions has been provided. We think that this objection is untimely and not well taken. Nowhere in the pleadings or in the presentation of this case was any question raised by either party as to the basis for computing the deductions. The respondent has used the cost figures shown in the petitioner’s books, which were admitted in evidence without objection from counsel and which appear to us fairly to represent what they purport. The petitioner has taken exception only to the rate used by the respondent. We think That the figures provided constitute the proper basis for the recompu-tation at the rates above specified.
Reviewed by the Board.

Judgment will be entered under Rule 50,

Mttiídock dissents.